# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | |
|---|---|
| Case No. | CR 12-527-GW |
| Date | May 1, 2020 |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

Interpreter: NONE

| Javier Gonzalez | None Present | Timothy J. Searight - not present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| John Darrell Krokos | not | ✔ | | Brianna F. Mircheff, DFPD | not | ✔ | |

**Proceedings:**  **IN CHAMBERS - RULING ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [995]**

    Attached hereto is the Court's Ruling. The Court would GRANT the motion, and Krokos's term of imprisonment would be reduced to time served. The Court sets a status conference date of May 7, 2020 at 8:00 a.m. (counsel to appear telephonically), to discuss with the parties whether the terms of Krokos's supervised released should be modified and whether there is a plan for Krokos's removal to Canada.

 

                                                                                                                                                          :

Initials of Deputy Clerk    JG

cc:

<u>USA v. Krokos et al</u>; Case No. 2:12-cr-00527-GW-1
Ruling on Motion to for Compassionate Release

I.    Background

Defendant John Darrell Krokos moves this Court for compassionate release pursuant to 18 U.S.C. § 3582(C)(1)(A)(i) because of his non-Hodgkin's lymphoma and renal cell carcinoma. *See generally* Motion for Compassionate Release ("Motion"), Docket No. 995; Supplemental Memorandum in Support of Motion for Compassionate Release ("Supp. Motion"), Docket No. 999.  Krokos also argues that the COVID-19 pandemic and an outbreak of it at Federal Correctional Complex, Butner, where he is currently incarcerated, support his request for release. *See generally* Reply in Support of Motion for Compassionate Release ("Reply"), Docket No. 1008; Supplemental Authorities in Support of Request for Compassionate Release ("Supp. Reply"), Docket No. 1009.  Plaintiff United States opposes the motion, arguing that Krokos has not exhausted his administrative rights within the Bureau of Prisons ("BOP") and that Krokos's condition does not meet the requirements for compassionate release.  *See generally* Opposition to Motion for Compassionate Release ("Opp'n"), Docket No. 1007.  The parties have also filed supplemental briefing regarding the COVID-19 crisis.  *See generally* Government's Further Opposition to Motion for Compassionate Release ("Supp. Opp'n"), Docket No. 1011; Defendant's Surreply in Support of Motion for Compassionate Release ("Surreply"), Docket No. 1012.  For the reasons discussed below, the Court finds that Krokos has demonstrated "extraordinary and compelling" reasons to justify his immediate release, and therefore **GRANTS** Krokos's motion.

A.    <u>Conviction and Sentence</u>

On May 8, 2014, the Court sentenced Krokos, a Canadian citizen, to 138 months in custody after he pleaded guilty to conspiracy to possess with intent to distribute and to distribute cocaine.  *See* Judgment and Commitment, Docket No. 469.  According to his plea agreement, Krokos worked with his co-conspirators to coordinate the sale and transportation of cocaine from sources of supply in Mexico to purchasers within the United States.  *See* Plea Agreement, Docket No. 299, at 6-7.  The transactions Krokos coordinated included:

- The delivery of 25 kilograms of cocaine to a customer and the receipt of a $300,000 down payment on July 20, 2010.

1

- The delivery of 46 kilograms of cocaine to a customer in exchange for $750,000 in August 2010.
- The delivery of 5 kilograms of cocaine and the receipt of $120,000 on April 14, 2010.
- The delivery of 28 kilograms of cocaine on August 10, 2011.
- The delivery of 18 kilograms of cocaine on September 28, 2011.

*Id.* at 8. The Sentencing Guidelines range for Krokos's offense was 168 to 210 months. *See* Presentence Report ("PSR"), Docket No. 390, at 4. However, the Court departed from the Guidelines range to sentence Krokos to 138 months of confinement, followed by five years of supervised release, in part because of a sentencing disparity issue and his lack of any prior convictions. *See* Minutes of Evidentiary Hearing and Sentencing, Docket No. 468. Krokos's current release date is September 19, 2022. *See* Opp'n, Ex. A.

      B.  <u>Krokos's Medical Condition and Application for Compassionate Release</u>

Krokos was first diagnosed with Stave IV lymphoma in February 2018, a year and several months after he first reported pain in his kidneys. *See* Docket No. 1002, Ex. T; Ex. J; *see also* Motion at 2-3. From March to August 2018, Krokos received chemotherapy treatments, but the mass on his kidney did not respond to chemotherapy. Exs. U, V. When medical staff took a second biopsy in November 2018, they discovered that Krokos had a second cancer, renal cell carcinoma. Ex. Y. At that time, the BOP doctor indicated that Krokos's Follicular Lymphoma International Prognostic Index ("FLIPI") Score was 3, indicating a ten year survival rate of approximately 35%. Ex. C.

On January 29, 2019, Krokos's kidney mass was successfully removed via cryoablation. Ex. G. Scans in March and July 2019 did not show recurrence of either cancer. Ex. AA. However, Krokos continues to experience pain in his left kidney. Ex. BB. Krokos's oncologist ordered a biopsy, which was scheduled for March 20, 2020. Opp'n Ex. B. However, that biopsy has not yet occurred. *See* Surreply at 2. Krokos remains on Rituxin, which reduces the likelihood of a recurrence of cancer but also suppresses the immune system. Opp'n Ex. B; Reply at 2.

On April 19, 2019, Krokos submitted a compassionate release request to LSCI Butner's warden. *See* Motion at 1. Krokos did not receive either an approval or denial of his request within 30 days of his request. *Id.* at 2. Plaintiff filed a motion for compassionate release with this Court on June 17, 2019, which his public defender supplemented on October 4, 2019. *See*

2

Docket Nos. 995, 999.  The warden denied his request on July 25, 2019, finding that Krokos did not meet the criteria of having a terminal medical condition.  *See* Opp'n at 2-3.

## II.     Legal Framework

An inmate may move for compassionate release under Section 3582(c)(1), which as modified by the First Step Act in December 2018 provides that:

> The court may not modify a term of imprisonment once it has been imposed except that −
>> (1) in any case −
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that −
>>>> (i) extraordinary and compelling reasons warrant such a reduction;
>>>> . . .
>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1).

## III.    Discussion

The Government opposes Krokos's motion on the grounds that Krokos has not exhausted his administrative remedies.  *See generally* Supp. Opp'n.  The Government argues that Krokos has not raised his COVID-19 arguments to the BOP, so this Court should stay Krokos's request for compassionate release until the BOP can evaluate the risks he faces in connection with COVID-19.  *Id.* at 2-3.  However, Krokos has already fully raised his medical ailments to the BOP.  *See* Motion, Ex. B.  He does not raise any new ailments to the Court that he did not present to the BOP; rather, he raises the same ailments and argues additionally that these ailments make him particularly susceptible to COVID-19.  The fact that Krokos points to the current COVID-19 crisis as further support for his request for compassionate release does not negate his previous exhaustion of administrative remedies.  To require Krokos to re-exhaust his administrative remedies because a deadly virus to which he is particularly susceptible has arisen

3

in the interim would unduly − and dangerously − delay resolution of his request.[1] *See, e.g. United States v. Wishner*, 2:14-cr-712-SJO, Dkt. #155 (C.D. Cal. Mar. 27, 2020) (granting compassionate release despite similar re-exhaustion argument by Government). The Court finds that Krokos satisfied Section 3582(c)'s exhaustion requirement.

The Court also finds that a consideration of the applicable sentencing factors from 18 U.S.C. § 3553(a) supports granting Krokos's motion for compassionate release. Krokos has already served over 50% of his full sentence, and his current release date is September 19, 2022. *See* Opp'n, Ex. A. The Court notes Krokos's lack of criminal history, the non-violent nature of the offense, his acceptance of responsibility, his lack of any disciplinary incidents during his time in custody, and his use of his time in custody to increase his education and gain life skills. *See generally* PSR; Motion Exs. G, H, I. Further, Krokos has a plan in place for his return to society: he plans to return to Canada to live with his sister, who suffers from Chron's disease, and help with her daughter, and he plans to work for his mother in her restaurant.[2] *See* Motion at 8; Ex. I. Given all this, early release is not inconsistent with "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Finally, the Court finds that "extraordinary and compelling reasons" warrant Krokos's immediate release. The statute does not define the term "extraordinary and compelling reasons," but the Sentencing Commission has. The Application Notes to U.S.S.G. § 1B1.13 identify three specific circumstances that are considered "extraordinary and compelling" as well as a catchall provision. *See* U.S.S.G. § 1B1.13 cmt. N.1(A)-(D). The three specific circumstances cover: (1) the defendant's health; (2) the defendant's age; and (3) the defendant's circumstances. Krokos's motion is premised on his medical conditions. The defendant-health category requires that the defendant "is suffering from a terminal illness" or is suffering from some other condition or impairment "that substantially diminishes the ability of the defendant to provide self-care within

---

[1] Indeed, recognizing the time-sensitive nature of the COVID-19 pandemic, numerous courts have waived the administrative exhaustion requirement altogether. *See United States v. Zukerman*, 17-Cr.-194-(AT), 2020 WL 1659880 *2 (S.D. N.Y Apr. 3, 2020) ("Zukerman's exhaustion of the administrative process can be waived in light of the extraordinary threat posed − in his unique circumstances − by the COVID-19 pandemic.") *Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Wilson Perez*, No. 17 CR. 513-3 (AT), 2020 WL 1546422, *2-3 (S.D.N.Y. Apr. 1, 2020).

[2] Krokos does not indicate whether he is willing to stipulate to removal to Tahiti, *i.e.* that he has a plan to self-deport.

the environment of a correctional facility." *Id.* cmt. N.1(A).

Krokos argues that his cancers constitute an extraordinary and compelling reason to grant compassionate release. First, Krokos's cancers arguably satisfy the standard for a terminal illness. Section 1B1.13 explains that a terminal illness is a "serious and advanced illness with an end of life trajectory," although "[a] specific prognosis of life expectancy . . . is not required." Defendant suffered from both Stage IV lymphoma and renal cell carcinoma. He was told in 2018 that he had a FLIPI score of 3 regarding his non-Hodgkins' lymphona, indicating a ten-year survival rate of 35%. Motion, Ex. C. While his 2019 tests do not show a recurrence of his cancers, he has experienced pain in his kidney and has been unable to obtain a biopsy despite a doctor's order. Opp'n Ex. B. This is particularly troubling given the significant rates of recurrence in both cancers. *See* Supp. Motion at 6-7. Given these conditions, the Court would find that Krokos has a "serious and advanced illness with an end of life trajectory." Section 1B1.13.

Even if Krokos's condition did not constitute a terminal illness, the Court would find that Krokos's condition constitutes an "extraordinary and compelling circumstance" in light of the current COVID-19 crisis. Not only has Krokos recently suffered from two different forms of cancer with a significant likelihood of recurrence, he continues to suffer from kidney pain but has not been able to obtain the necessary diagnostic testing. Further, Krokos is currently taking an immunosuppressant drug in order to reduce the chance of his cancers returning. The Court finds that given the ongoing COVID-19 pandemic, these medical conditions − which make Krokos especially vulnerable to serious illness if he contracts COVID-19[3] – "substantially diminish" his ability "to provide self-care within the environment of a correctional facility." U.S.S.C. § 1B1.13 cmt. n.1(A)(ii). "Confined to a small cell where social distancing is impossible, [defendant] cannot provide self-care because he cannot protect himself from the spread of a dangerous and highly contagious virus." *United States v. Perez*, 17-cr-513-3-AT, 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020). *See also United States v. Hammond*, No. CR 02-294 (BAH), 2020 WL 1891980, at *8 (D.D.C. Apr. 16, 2020) (granting compassionate release for defendant whose prostate cancer, once in remission, had returned); *United States v. Edwards*, No. 6:17-CR-00003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020) (granting

---

[3] Centers for Disease Control and Prevention, People who are at higher risk for severe illness (April 30, 2020), http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (includes "people who are immunocompromised" due to conditions including "cancer treatment").

5

compassionate release and finding that risk of contracting COVID-19 "further substantiated" request of defendant with brain cancer, even though his cancer had responded positively to course of chemotherapy). As of today, there are 237 confirmed cases of COVID-19 across the inmates of FCC Butner, and 20 cases among staff.[4] Six inmates have already died. This figure has grown significantly from the time the Government filed its supplemental opposition on April 15, 2020, at which time 61 inmates had tested positive for COVID-19 at FCC Butner. Supp. Opp'n at 2. Accordingly, the Court finds that "extraordinary and compelling reasons" warrant Krokos's immediate release.

### IV. Conclusion

Based on the foregoing discussion, the Court would **GRANT** the motion, and Krokos's term of imprisonment would be reduced to time served. The Court sets a status conference date of May 7, 2020 (counsel to appear telephonically), to discuss with the parties whether the terms of Krokos's supervised released should be modified and whether there is a plan for Krokos's removal to Canada.

---

[4] *See* BOP https://www.bop.gov/coronavirus/index.jsp (last accessed April 30, 2020).